28363. BITUMINOUS CASUALTY CORPORATION *et al.* v. WILBANKS.

DECIDED DECEMBER 20, 1940.

T. *Elton Drake, Edward B. Lovell,* for plaintiff in error.

W. *B. Robinson, R. Noel Steed,* contra.

STEPHENS, P. J. (After stating the foregoing facts.) The hearing in this case was requested by the employer and the insurance carrier on the ground of a change in condition of the claimant for the better and that he had ceased to be disabled. They admitted that the burden was on them to establish these facts and assumed this burden on the hearing. The director found that the claimant's condition had changed, and that the employer and the insurance carrier were justified in discontinuing the payments of compensation to him under a former agreement for total disability. This award was approved by the full board but was set aside by the superior court on appeal. The only evidence on which the director could base the conclusion that the claimant had ceased to be disabled was the testimony of the physician for the insurance carrier who was put up as a witness, and whose testimony appears in the foregoing statement of facts. This physician testified that while the claimant had "some cosmetic loss" from the accidental injury sustained by him "functionally I see no reason why the man could not work." This physician further testified that "the depression in his face and the disturbance of his nerves that supply this area I don't believe is disabling," that "I don't think there is any disability from labor," and that "I think that so far as the injury was concerned he could work." This witness further testified that the claimant had an injury to the right side of his face, having sustained a severe blow and a concussion thereof, that he suffered a paralysis in that side of his face, that while he was disabled for several months that when he made an examination of the claimant on September 30, 1938, he believed he was able to return to work, and when he made an examination of him on the day of the hearing, which was January 17, 1939, "I believe he could work." The witness further stated that he did not treat the claimant, but that when the claimant was sent to see him he referred him to a specialist. This physician was not an ear, eye, and nose specialist. He testified that "from the observation I have given this fellow and the history of the case I am willing to state ir-

respective of what he says, in the absence of any pathological findings, that he is able to perform manual labor."

It appears conclusively from the evidence that the claimant suffered a severe injury by being hit in the right side of his face and head with a windlass which broke loose while the claimant was drawing up a bucket of heavy material out of the mine shaft at which he was working. It appears from the statement of specialists who were consulted by the claimant and who treated him that because of this blow from the windlass he sustained severe face and head injuries which produced, among other things, a definitely established right facial paralysis and loss of hearing in the right ear. This evidence is not in contradiction of the testimony of the doctor for the insurance carrier and employer, from whose testimony, in giving his opinion that the claimant was now able to work and was not suffering any disability from his injury, it does not appear that he made a pathological examination of the claimant. His testimony was based on the history of the case and his observation of the claimant "in the absence of any pathological findings." The claimant was a laborer and depended for a living upon employment requiring manual labor and physical effort, which required the use of his hands, legs, voice, sight, and hearing. It is not disputed that the claimant, according to his own testimony, on account of the injury to his face, head, and right ear at the time of the hearing, was physically unable to perform manual labor during cold weather; that exertion causes pain and causes his right eye to trouble him and his sight to become impaired; that slight physical exertion "lays" him "up" and causes him to "feel like" he is "dead all over, don't feel like moving;" that because of his facial paralysis he is unable to "spit off himself," and he gets "choked and bread crumbs get in there and it gags me and chokes me," that he is not balanced like he once was, that he is out of balance and that his speech is affected to the extent that he can not "call a hog or cow," and can not speak some words plainly. From the undisputed, uncontradicted statement of a specialist who examined the claimant on January 12, 1939, before the hearing it appears that the claimant's condition showed, in addition to a permanent facial paralysis, that he could not whistle, eat, or speak certain words with satisfaction; that his right eyelid droops, and that his hearing on the right side is impaired about 50 per cent.

We therefore conclude, under the undisputed evidence, that the insurance carrier and employer failed to carry the burden of showing that the claimant had recovered from the disability for which compensation had been paid to him by the carrier under a previous agreement between the claimant and the insurance carrier, and that it is conclusive that the claimant, at the time the insurance carrier ceased the payment of compensation to him, and at the time of the hearing, was suffering some disability. It therefore appears from the evidence in the case, and without contradicting the testimony of the physician for the insurance carrier, that the claimant's earning capacity as a "day laborer" was impaired at the time compensation payments ceased and at the time of the hearing. See *Blue Bell Globe Mfg. Co.* v. *Baird,* 61 *Ga. App.* 298 (6 S. E. 2d, 83).

The judgment sustaining the appeal of the claimant from the award of the Industrial Board and ordering that the compensation payments be continued is affirmed.

*Judgment affirmed. Sutton and Felton, JJ., concur.*